UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

ROBERT LEE WIGGINS,

Plaintiff,

Case No.: 17-cv-4270

-against-

THE GARDEN CITY GOLF CLUB a/k/a
GARDEN CITY MEN'S CLUB d/b/a
GARDEN CITY GC, and GEORGE OUELLETTE,

Defendants.

**COMPLAINT**

***Jury Trial Demanded***

-----------------------------------------------------------------------------X

Plaintiff Robert Lee Wiggins ("Plaintiff"), by and through his attorneys, Frank & Associates, P.C., as and for his Complaint in this action against Defendants The Garden City Golf Club a/k/a Garden City Men's Club d/b/a Garden City GC ("Garden City Golf Club"), and George Ouellette ("Ouellette") (collectively, "Defendants"), hereby alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendants based upon violations of Plaintiff's constitutional and statutory civil rights pursuant to 42 U.S.C. § 1981.

2. Specifically, Plaintiff alleges that Defendants, by and through their agents and employees, did negligently, wantonly, recklessly, intentionally, and knowingly seek to wrongfully deprive Plaintiff of equal terms of employment by way or perpetrating, allowing, encouraging, condoning and failing to address discriminatory harassment based on race, and *inter alia* by permitting Defendant Ouellette to pose next to Plaintiff exposing his genitalia or an apparatus resembling male genitalia and placing it within inches of and upon Plaintiff's face in full view of Plaintiff's co-workers, and allowing a photograph to be taken of said behavior and posted on social

media, with malicious intent and, alternatively, a clear, reckless, and unlawful disregard for the racial animus displayed by such an overt act.

3. Plaintiff alleges that the acts complained of in the proceeding paragraphs were committed by Defendants, their agents and employees, purposefully and with the intent to discriminate against Plaintiff based upon his race and color.

4. Such acts were done knowingly, purposely, and with all intentions of depriving Plaintiff of his rights to be free of discrimination within his employment.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action and jurisdiction over Defendants pursuant to 28 U.S.C. § 1331.

6. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Plaintiff's claims for unlawful employment practices occurred within the County of Nassau, New York.

7. There are no administrative exhaustion requirements for bringing this civil rights action.

**PARTIES**

8. At all times relevant, Plaintiff Robert Lee Wiggins was and still is a resident of the County of Nassau, in the State of New York, residing in Hempstead, New York 11550.

9. Upon information and belief, at all times relevant, Defendant Garden City Golf Club is a domestic, not-for-profit corporation with its principal place of business located at 315 Stewart Avenue, Garden City, New York, County of Nassau and State of New York.

10. Upon information and belief, at all relevant times, Defendant Ouellette was the Caddy Manager of the Garden City Golf Club, and had the authority to hire, fire, and otherwise alter the terms and conditions of Plaintiff's employment.

**FACTS**

11. Plaintiff, an African-American male, was regularly employed by Defendant Garden City Golf Club as a caddy beginning in or around 1997.

12. Plaintiff's responsibilities as a caddy included, *inter alia*, carrying golf clubs weighing up to seventy (70) pounds, finding and retrieving golf balls and identifying players' golf balls located on the course.

13. At all relevant times, Defendant Ouellette was the Caddy Manager of the Garden City Golf Club, and is directly responsible for the management and oversight of the work performed by the club's caddies.

14. Plaintiff reported to work at Defendant's clubhouse and waited for Defendant Ouellette to assign him to assist a specific golfer or golfers in a group for a round on the 18-hole golf course. Plaintiff typically worked one to two rounds per day.

15. After the round was complete, Plaintiff cleaned the member's golf clubs and checked in with Defendant Ouellette to wait for a new assignment.

16. Both before and after a round, while waiting for a new assignment, Defendant Ouellette instructed and directed Plaintiff to perform miscellaneous tasks, such as transporting bags from members' cars to the clubhouse or moving caddy carts around the premises as necessary to accommodate the members.

17. At all times, Defendant Ouellette controlled Plaintiff's schedule, pairing Plaintiff with golfers at his sole discretion.

18. Throughout Plaintiff's employment, Plaintiff has always been an exemplary employee with no instances of noted misconduct.

19. In or around September 2015, Plaintiff, while on an approved break, took a nap in a chair on the premises of the Garden City Golf Club.

20. Defendant Ouellette, upon seeing Plaintiff sleeping in a chair, posed next to the sleeping and unsuspecting Plaintiff.

21. Defendant Ouellette then exposed his genitalia and placed his erect penis or an object resembling an erect penis within inches of and upon Plaintiff's face.

22. A photograph was taken by another caddy, Ronnie Conyers ("Conyers"), depicting Defendant Ouellette engaging in this outrageous, lewd, and wholly inappropriate act.

23. Conyers then published the photograph on social media, specifically Facebook, without Plaintiff's knowledge or consent, where it was then freely viewable by any person in the world instantly.

24. The photograph is extremely evocative of similar images from the antebellum south, in which white slave owners asserted their ownership over their black slaves through sexual imagery.

25. This depiction was willfully intended to be reminiscent of this form of race relations, with the black man being subservient and in a position of slavery to the white overseer.

26. Plaintiff became aware of Defendant Ouellette's actions when he witnessed the photograph of this intolerable and derogatory behavior.

27. As a result of Defendants' conduct, Plaintiff was humiliated and offended and could not bear the thought of returning to work to face his co-workers. Thus, the incident resulted in Plaintiff's constructive discharge.

28. This conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

29. Plaintiff believed his work environment to be hostile and abusive as a result of the Defendants' conduct.

**FIRST CAUSE OF ACTION**

30. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

31. The above referenced conduct was part of discriminatory harassment against Plaintiff in the workplace based on race and color, by Defendants, their agents and employees, all of which violates 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991.

32. Defendants, by and through their agents and employees, sought to deprive the Plaintiff of equal protection, privileges, benefits, and opportunities as afforded to similarly situated non-black employees.

33. By creating and fostering a hostile and abusive work environment, Defendants violated Plaintiff's rights to be free from discrimination in the workplace.

34. Defendants knew or should have known that the work environment was hostile and abusive towards African Americans.

35. By allowing, perpetrating, condoning or failing to address, remedy or change, the aforementioned hostile and abusive work environment, Defendants deprived Plaintiff of the full and equal benefit of the laws.

36. Defendants acted with malice and/or reckless indifference to Plaintiff's constitutionally protected rights.

37. As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

38. Plaintiff is entitled to an award for damages for past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

39. Due to the severity of Defendants' conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

40. Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate federal law;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiff for all monetary and/or economic harm; for harm to his professional and personal reputation and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation; and for all other monetary and/or non-monetary losses suffered by Plaintiff;

D. An award of punitive damages to punish Defendant Ouellette for his wanton, reckless, and malicious acts;

E. An award of punitive damages to punish Defendant Garden City Golf Club;

F. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

G. Such other and further relief as the Court may deem just and proper.

Dated: Farmingdale, New York
July 17, 2017

**FRANK & ASSOCIATES, P.C.**

*Attorneys for Plaintiff*

By: ______________________

Neil M. Frank, Esq.
Michael A. Berger, Esq.
500 Bi-County Boulevard, Suite 465
Farmingdale, New York 11735
Phone: (631) 756-0400
Fax: (631) 756-0547
nfrank @laborlaws.com
mberger@laborlaws.com